UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALFORNICE MANZIE SR. and
JACQUELINE MANZIE,

    Plaintiffs,

vs.                                                    Case No. 12-12911

NATIONWIDE PROPERTY &                      HON. AVERN COHN
CASUALTY INSURANCE COMPANY,

    Defendant.
_____/

**MEMORANDUM AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (Doc. 7) AND DISMISSING CASE**

**I. INTRODUCTION**

This is a fire loss insurance case. Plaintiffs Alfornice and Jacqueline Manzie (the "Plaintiffs") suffered a fire at their home in Rochester Hills. The home was insured by Defendant Nationwide Property & Casualty Insurance Company (the "Defendant"). Plaintiffs filed a claim with Defendant; the claim was denied. Defendant cited the Plaintiffs' failure to provide a Sworn Statement in Proof of Loss within 60 days of the fire loss, as well as fraud and misrepresentations in the course of Defendant's investigation, as the basis under the policy and Michigan law for denying the claim. The Plaintiffs filed this lawsuit for breach of contract. Plaintiffs contend that their claim was wrongfully denied. Now before the Court is Defendant's motion for summary judgment (Doc. 7). For the reasons that follow, the motion is GRANTED. This case is DISMISSED.

## II. BACKGROUND

### A. The Policy

Plaintiffs owned the home located at 1921 Carter, Rochester Hills, MI 48306 (the "home"). The home was insured by Defendant under policy number 91 21 HP 217740 (the "policy"). (Doc. 7-1 at 3–44, Policy of Insurance). Jacqueline Manzie (Jacqueline) was the named insured under the policy.[1] (*Id.* at 3).

### B. The Claim

On September 4, 2010, the home was destroyed in a fire. Jacqueline immediately notified Defendant. Defendant initiated the claims process; the claim was assigned claim number 91 21 HP 217740 09042010 01.

### C. Defendant's Acknowledgment of Claim and Request for Information

The following day, on September 5, 2010, Defendant sent two letters to Jacqueline. The letters acknowledged that Jacqueline notified Defendant of the fire loss. In one letter, Defendant informed Jacqueline that the policy may have been cancelled for nonpayment of premiums at the time of the loss. (Doc. 7-1 at 46, 9/5/2010 Letter One). It was later determined that the policy was not cancelled and that it was in effect at the time of the fire.

In the second letter, Defendant informed Jacqueline that her help was needed "to identify damaged property, gather records, and get an estimate of the repairs." (Doc. 7-1 at 48, 9/5/2010 Letter Two). To this end, Defendant sought from Jacqueline four forms to be completed and returned:

---

[1] The policy lists Jacqueline as the only named insured. At his deposition, Alfornice explained that Jacqueline did "things her way" and, although he was not a named insured, he paid the bills. (Doc. 7-1 at 67, Alfornice Dep.). Because Defendant does not challenge Alfornice's status as a proper plaintiff, the Court sees no reason to do so.

     1.     Non-Waiver Agreement;

     2.     Authorization Form;

     3.     Sworn Statement in Proof of Loss ("SSPL"); and

     4.     Loss Inventory Sheet(s).

(*Id.* at 48–49).

Defendant explained to Jacqueline that the SSPL is the "formal, legal claim and must be returned within sixty (60) days, unless such time is extended in writing by [Defendant]." (*Id.* at 48). To help Jacqueline complete the SSPL, Defendant's letter provided nine specific questions for Jacqueline to answer. (*Id.* at 48–49). Among other requirements, Jacqueline was to describe the loss and how it occurred, explain how the home was occupied, list all the owners/mortgage holders etc., and state the total amount of the claim.

### D. Defendant's Informal Interview of Plaintiffs

On September 6, 2010, Defendant's representative James Smith conducted an "informal recorded interview" with Plaintiffs. (Doc. 7-3 at 2–23, Recorded Interview Transcript). In the interview, Plaintiffs represented to Smith that they lived at the home together. Jacqueline told Smith that, at the time of the fire, her niece Juanda Counts (Counts) was staying with Plaintiffs as a visitor from Florida; according to Jacqueline, Counts had been in town for three days. (*Id.* at 4). Jacqueline told Smith that Counts discovered the fire. During the interview, Smith obtained other general information from Plaintiffs.

### E. Back and Forth Correspondence Between Defendant and Plaintiffs

On September 6, 2010, Plaintiffs signed and faxed to Defendant the Non-Waiver Agreement, Authorization Form, and Permission Granted Form which allowed Defendant

the right to enter the home for investigation purposes. (Doc. 7-1 at 53–56, 9/6/2010 Signed Forms). Plaintiffs, however, did not complete or return the SSPL to Defendant.

On the same day, Defendant mailed Jacqueline an Additional Living Expense form "to help document and verify expenses you [Jacqueline] have incurred as a result of this claim." (Doc. 7-1 at 58–59, Additional Living Expense Letter). Although Plaintiffs say that they received Defendant's letter and attached form, they did not fill it out or return it to Defendant. (Doc. 7-1 at 68, Alfornice Dep.; *id.* at 95–96, Jacqueline Dep.).

On October 13, 2010, Defendant mailed to Plaintiffs an Advance Payment on Condition of Reservation of Rights form. (Doc. 7-2 at 2–3, Advance Payment Letter). Plaintiffs signed the form and returned it to Defendant. (Doc. 7-2 at 7, Signed Advance Payment form). On receipt of the signed form, Defendant paid $12,500.00 to Plaintiffs as an advance on any valid claim. Jacqueline received the advance and gave $500.00 to Alfornice. (Doc. 7-1 at 97, Jacqueline Dep.). As indicated on the advance form, the payment was not considered "payment under any portion of the policy," but a good faith payment for the loss. (Doc. 7-2 at 7, Signed Advance Payment form). The advance payment form indicated that Defendant, "in making this advance, reserve[s] and do[es] not waive any right or requirement under the policy. . . ." (*Id.*). In addition, by signing the form, Plaintiffs agreed "that if either the policy or the claim is not valid and payment is not required by [Defendant], [Plaintiffs] will repay the advance." (*Id.*).

On October 13, 2010, Defendant also sent Plaintiffs a letter requiring additional information from Plaintiffs in order to process the claim. (Doc. 7-2 at 5, 10/13/2010 Additional Info Letter).

On November 19, 2010, Defendant made another payment, this time for the "partial

4

dwelling loss Actual Cash Value settlement toward the outstanding mortgages on the property." (*Id.* at 10, 11/19/2010 Letter to Plaintiffs; *id.* at 12, 11/19/2010 Letter to Banks; *id.* at 14, Check Issued). The payment covered Plaintiffs' first mortgage in the amount of $269,350.12 and their second mortgage in the amount of $62,918.22. Defendant made clear to Plaintiffs that it was paying the balance on the mortgages under a reservation of rights. In other words, Defendant retained the right to deny Plaintiffs' claim and ask for a return of the advance.

The check issued by Defendant to pay off the mortgages was four-party in the amount of $333,224.14. The check was signed and sent to the first mortgagee, Wachovia Mortgage; Wachovia Mortgage was paid $270,053.02; it issued a two-party check to Alfornice and the second mortgagee, Fifth/Third Bank, for $63,171.12. The second mortgage was in Alfornice's name, only. Jacqueline intercepted the second check, forged Alfornice's name on the endorsement line, cashed it, and used the money for her own purposes.[2]

Soon after Defendant advanced the payment on the mortgages, Jacqueline communicated to Defendant her dissatisfaction in the manner Defendant was handling the claim. Particularly, Jacqueline did not understand why Defendant was requiring Plaintiffs submit to an examination under oath ("EUO"). In a letter sent to Defendant dated December 3, 2010, Jacqueline, among other things, inquired as to when Defendant would make a decision on Plaintiffs' claim. (Doc. 7-2 at 16–17, 12/3/2010 Letter to Defendant).

On December 6, 2010, Defendant responded to Jacqueline's letter. Defendant

---

[2] Alfornice testified at his deposition that he later paid the Fifth/Third Bank mortgage when he sold the home.

explained that it was investigating the claim "in a timely manner and consistent with Michigan law and the terms of [the policy]." (*Id.* at 19, 12/6/2010 Letter to Plaintiffs). Defendant further explained to Plaintiffs that they were required to submit to an EUO under the terms of the policy. In addition, Defendant made another $25,500.00 advance to Plaintiffs under a reservation of rights; this payment covered Plaintiffs purported temporary living accommodations. (*Id.* at 20).

**F. Plaintiffs' Examinations Under Oath**

On January 26, 2011, Defendant took separate EUO's of both Plaintiffs.

**1. Alfornice's Examination Under Oath**

At his EUO, Alfornice testified that he, along with his wife and his son, Alfornice Manzie, Jr. ("Jay"), were the occupants of the home at the time of the fire. (Doc. 8-4 at 11, Alfornice EUO). This was contrary to Plaintiffs' original statements in the recorded interview. At the EUO, Alfornice stated that his wife was occupying the property "part time." (*Id.*). In addition, at his EUO Alfornice discussed in detail the personal property that he had inside the house at the time of the fire and the mortgages secured by the home.

**2. Jacqueline's Examination Under Oath**

At her EUO, Jacqueline testified that in March of 2010, she rented an apartment at 1705 Cliffview in Rochester Hills (the "Cliffview apartment").[3] She maintained that she did not move out of the home, but that she was "back and forth" between the home and the Cliffview apartment. (Doc. 8-6 at 16, Jacqueline EUO). She testified that she left all of her

---

[3] During the investigation, Defendant discovered that Jacqueline entered into a lease signed and dated February 26, 2010 for an apartment at the Cliffview Apartments in Rochester, Michigan. (Doc. 7-4 at 2–17, Apartment Lease Agreement). The lease provided a lease term of March 1, 2010 through May 31, 2011.

6

clothes at the home because "they would be . . . safer" rather than at the Cliffview apartment (*Id.* at 17). Jacqueline explained that her son Jay lived with her at the apartment. She also testified that Jay lived with her and Alfornice at the Carter street home.

Jacqueline also testified at her EUO that her niece, Counts, had been residing at the home at the time of the fire for about thirty days; she was visiting from Florida. (*Id.* at 22). This was contrary to Jacqueline's statement at the earlier recorded interview where she stated that Counts had been in town for three days. Further, Jacqueline stated that she had not been to the home since "[a] couple days prior" to the fire. (*Id.* at 24). She testified that she was "always in and out" of the home, but only slept there "about 10 times" a month. (*Id.*).

### G. Plaintiffs Submit Sworn Statement in Proof of Loss

On February 9, 2011, Plaintiffs submitted to Defendant their SSPL. (Doc. 8-8, 2/9/2011 SSPL). The SSPL claimed a loss of $333.20 plus 20% of the $320,716 policy limit for dwelling loss. In addition, Plaintiffs claimed $224,501.00 the policy limit, for loss of personal property. Plaintiffs did not state an amount for loss of use of the home. Instead, Plaintiffs stated that the amount was "pending."

In support of their SSPL, Plaintiffs attached Defendant's estimation of the valuation of the damages for the reported loss and their disagreements with certain estimations.

### H. Defendant Rejects Sworn Statement in Proof of Loss

On March 9, 2011, Defendant rejected Plaintiffs' February 9 SSPL. Defendant listed the following reasons for rejecting the SSPL:

- it was late and no extensions were requested or granted;

- it was not on the form supplied to Plaintiffs by Defendant;

- Plaintiffs did not state a "replacement cost" of the home at the time of loss;

- Plaintiffs did not state the "actual cash value" of the loss;

- Plaintiffs did not state the "actual loss and damage to the described home as a result of said loss";

- Plaintiffs listed the "amount of claim" as "pending" but also stated that the loss was $224,501. In addition, Plaintiffs' listed amount of loss was not supported by competent documentation or sufficient information and did not specify whether the amount claimed represented the actual cash value or replacement value of the losses;

- it did not list or document a stated time, cause and origin of loss; and

- Plaintiffs did not provide Defendant with requested records or an opportunity to conduct an EUO of multiple third parties.

(Doc. 7-2 at 93, Rejection of 2/9/2011 SSPL).

Subsequently, on March 31, 2011, Defendant sent Plaintiffs a second SSPL form and requested that it be returned within thirty days. (*Id.* at 96, Second SSPL form). Plaintiffs did not fill out or return the second SSPL to Defendant.

**I. Jay's Examination Under Oath**

On June 16, 2011, Defendant took an EUO of Plaintiffs' son Jay. (Doc. 7-3 at 25–58, Jay EUO). At the EUO, Jay stated that he was the only person living in the home at the time of the fire. Jay testified that his father had moved out six months prior and his mother had moved out about four months prior. (*Id.* at 31). This was contrary to both Alfornice's and Jacqueline's testimony.

Jay also testified that, after the fire, he lived by himself at the Heritage Townhomes in Rochester Hills, Michigan. (*Id.* at 30). Jay testified that Defendant was paying his rent. This was because Plaintiffs submitted invoices to Defendant stating that Jacqueline, not

Jay, was living at the Heritage Townhomes. (Doc. 7-4 at 39–41, Rental Invoices).

### J. Defendant Formally Denies Plaintiffs' Claim

On July 26, 2011, Defendant by letter denied Plaintiffs' claim. The letter stated, in pertinent part:

> Our investigation has revealed that you [Jacqueline] and Mr. Manzie did not reside at 1921 Carter Rd., Rochester Hills, MI, at the time of the fire, but had separated, moved from the house and relocated [your] residence[s] to 1705 Cliffview Dr., Rochester Hills, MI, and 604 Lakewood St. Detroit, MI respectively. As a result, 1921 Carter Rd., Rochester Hills, MI did not constitute residence premises as defined under the policy and, therefore, there is no coverage under Coverage A, C and D for the claimed losses.[4]
>
> Further, you have intentionally misrepresented and concealed

---

[4] The policy contained the following relevant coverage provisions:

> **COVERAGE A – DWELLING**
> **We cover:**
> 1. the dwelling on the residence premises used mainly as your private residence, including attached structures and attached wall-to-wall carpeting.
> 2. materials or supplies on or adjacent to the residence.
>    . . .
>
>    . . . .
>
> **COVERAGE C – PERSONAL PROPERTY**
> We cover personal property owned or used by an Insured at the residence premises. . . .
>    . . . .
> **COVERAGE D**
> We cover, subject to the coverage limit which is the total limit, all of the following:
> 1. **Additional Living Expense.** . . .
> 2. **Fair Rental Value.** . . .
> 3. **Prohibited Use.** . . .

(Doc. 7-1 at 9–11, Insurance Policy).

9

> material facts concerning, among other matters, your residency, the circumstances pertaining to your activities, the loss, the fire, and your claim.
>
> You have also breached Your Duties After Loss (c)(2)–(3) and (d) by failing to provide a sworn statement in proof of loss within 60 days of our requests and by providing false information during the investigation of the loss and claim and falsely testifying at your examination under oath. You were also requested in writing to sign the transcripts of your examination under oath testimony, but failed to do so.
>
> Our investigation also revealed that despite moving out of the house and relocating your residence to other locations, you failed to advise Nationwide of the change in occupancy and use in violation of General Policy Conditions (1)(e).

(Doc. 7-2 at 103–104, Denial of Claim).

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1).

The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike Cnty. Bd. of Ed.*, 286 F.3d 366, 370 (6th Cir. 2002).

## IV. ANALYSIS

After Defendant denied Plaintiffs' claim, Plaintiffs filed a one-count breach of contract claim contending that Defendant failed to act in good faith and to timely pay Plaintiffs.

Defendant moves for summary judgment on two grounds. First, Defendant says that Plaintiffs' failure to timely submit a SSPL within 60 days gave it proper cause to deny the

11

claim.  Second, Defendant says that Plaintiffs' claim was properly denied because they acted with concealment, fraud, and misrepresentation in contravention of the policy.

**A. Plaintiffs Have Not Filed a Proper SSPL**

Plaintiffs' policy expressly stated their duty to submit a SSPL:

> **PROPERTY CONDITIONS**
>
> . . . .
>
> 3. **Your Duties after Loss.**  In case of loss, you must:
>
> . . . .
>
> d) submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
> (1) the time and cause of loss.
> (2) Interest of the insured and all others in the property involved and all liens on the property.
> (3) other insurance that may cover the loss.
> (4) changes in title or occupancy of the property during the term of the policy.
> (5) specifications of any damaged property and detailed estimates for repair of damage.
> (6) a list of damaged personal property showing in detail the quantity, description, actual cash value, and amount of loss. Attach all bills and receipts that support the figures.
> (7) receipts for additional living expenses and records supporting the fair rental value loss.
> (8) evidence or affidavit supporting a claim under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage.  It should state the amount and cause of loss.
>
> . . . .

> 8. **Suit Against Us.** No action can be brought against us unless there has been full compliance with the policy provisions. . . .

(Doc. 7-11at 20–22, Insurance Policy).

To the extent that Defendant argues that the late submission of the SSPL–on February 9, 2011–gave it proper cause under the policy and Michigan law to deny the claim, Defendant is mistaken. Defendant waived this argument by sending Plaintiffs a second SSPL form with instructions to return it within thirty days.

However, Defendant properly denied Plaintiffs' claim because Plaintiffs never returned a proper SSPL to Defendant. Defendant informed Plaintiff that the February 9 SSPL was inadequate for the reasons stated *infra*. Defendant provided Plaintiffs with a second SSPL form with instructions to return it within thirty days. Plaintiffs never returned the form or otherwise provided the necessary information requested by Defendant.

**B. Plaintiffs Made Material Representations Voiding Coverage Under the Policy**

Even if Defendant did not have the right to deny Plaintiffs' claim based on Plaintiffs' failure to provide an adequate SSPL, coverage under the policy was voided because Plaintiffs (1) acted fraudulently; and (2) did not notify Defendant of a change in the occupancy or use of the home.

**1. Plaintiffs Acted Fraudulently During the Course of the Investigation**

Plaintiffs' policy provided that it could be voided for concealment, fraud, or misrepresentation:

> **2. CONCEALMENT, FRAUD, OR MISREPRESENTATION**
>
> a) This policy was issued or renewed in reliance with the information you provided at the time of your application for or renewal of this insurance coverage. We may void

13

> this policy, deny coverage under this policy, or at our election, assert any other remedy available under applicable law, if you, or any other insured person seeking coverage under this policy, knowingly or unknowingly concealed, misrepresented or omitted any material fact or engaged in fraudulent conduct at the time the application was made or at any time during the policy period.
> b) We may void this policy, deny coverage for a loss or at our election, assert any other remedy available under applicable law, of any insured person or any other person seeking coverage under this policy has knowingly or unknowingly concealed or misrepresented any material fact or engaged in fraudulent conduct in connection with the filing or settlement of any claim.

(Doc. 7-1 at 44, Insurance Policy).

During the course of Defendant's investigation, Plaintiffs made material misrepresentations. Plaintiffs submitted a claim for living expenses indicating that Jacqueline, the named insured, was living at the Heritage Townhomes apartments. This representation was contradicted by Plaintiffs' son, Jay. At Jay's EUO, he testified that he was the only one living at the Heritage Townhomes after the fire. Because of Plaintiffs' false representation that Jacqueline was living at the apartment, Defendant paid for the living expenses associated with the Heritage Townhomes.

In addition, Jacqueline admitted that she cashed a two-party check for approximately $62,000.00 even though Defendant intended this check to be used to pay off the second mortgage. At her deposition, Jacqueline said that she cashed the check and stated that she needed the money. She testified that she believed that the mortgage was already paid. (Doc. 7-1 at 97, Jacqueline Dep.). However, Jacqueline's testimony is directly contradicted by Alfornice's testimony that Jacqueline "stole" the check.

Plaintiffs argue that Jacqueline's state of mind, i.e. whether she intended to defraud the Defendant, is an issue that should be decided by the factfinder. The Court disagrees. Generally, "[t]he intent with which a false representation is made and the existence of fraud is . . . a question of fact to be decided by the jury in view of all of the circumstances." *Trice v. Commercial Union Assur. Co.*, 334 F.2d 673, 677 (6th Cir. 1964) (citations omitted). However, where reasonable minds cannot differ as to the reason why the insured made material misrepresentations, the issue of intent is decided by the court as a matter of law. *See Flowers v. IDS Prop. Cas. Ins. Co.*, No. 10-cv-15164, 2012 WL 5906728, at *7 (Nov. 26, 2012). Here, Jacqueline falsely represented that she was living in the Heritage Townhomes after the fire. She admitted that she took the check intended to pay the second mortgage and used the money for other purposes. Accordingly, there is no question that Plaintiffs' fraud/misrepresentations voided coverage under the policy.

**2. Plaintiffs Submitted Confusing Information About Their Residency**

The policy provided:

> **GENERAL POLICY CONDITIONS**
>
> e) You have a duty to notify us as soon as possible of any change which may affect the premium risk under this policy. This includes, but is not limited to, changes:
> (1) In the title/ownership of the residence premises;
> (2) In the occupancy or use of the residence premises;
> (3) to the structure, physical improvements, or additions which increase the reconstruction cost of your dwelling by $5,000 or more.

(Doc. 7-1 at 43, Insurance Policy).

As described in Defendant's brief and as explained *infra*, there is no question that Plaintiffs failed to notify Defendant about the changes in occupancy of the property before

the fire:

> Here, the only named insured, Jacqueline Manzie, leased an apartment beginning in March 2010. She did not live in the insured premises on a daily basis. This policy was renewed just two weeks before this fire yet the named insured did not advise the Defendant that she was no longer living at the premises on a daily basis. Testimony of the parties involved is contradictory as to who was living in the house on the date of loss. The Plaintiffs' son testified that his parents had not lived at the home for several months. The Plaintiffs' recorded statements indicated that they were living at the house and none of their children were. At deposition, the Plaintiffs testified that their son was living there. Mrs. Manzie testified she stayed at the house 2–3 days a week.

(Doc. 7 at 21, Def's. Br.).

Drawing all reasonable inferences in favor of Plaintiffs, it is evident that there was, at the very least, changes in the occupancy of the home which Plaintiffs did not inform Defendant about. Plaintiffs' failure to notify Defendant about the changes in occupancy are fatal to their claim. *See McGrath v. Allstate Ins. Co.*, 290 Mich. App. 434 (2010) (reasoning that failure to comply with insurance policy term requiring notification to insurer of change of occupancy in the property bars claim under the policy).

## V. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment was granted and this case was dismissed.

SO ORDERED.

                         S/Avern Cohn
                         AVERN COHN
                         UNITED STATES DISTRICT JUDGE

Dated: August 14, 2013

                                                12-12911 Alfornice Manzie, et al v.
Nationwide Property & Casualty Insurance Company

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 14, 2013, by electronic and/or ordinary mail.

                                                S/Sakne Chami
                                                Case Manager, (313) 234-5160